**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| Robert Anderson, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:20-CV-00123-W-FJG |
| | ) |
| Jackson County, Missouri, et. al., | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT[1]**

COMES NOW Plaintiff, Robert L. Anderson ("Plaintiff"), by and through undersigned counsel, and for his Petition, hereby states to this Honorable Court as follows:

**NATURE OF THE**
**ACTION**

1.      This is a civil rights action brought under 42 U.S.C. § 1983 against Defendant Jackson County, Missouri concerning the Jackson County Department of Corrections' (hereinafter "Defendant County") failure to train and/or supervise its correctional officers, cruel and unusual punishment, and Defendant County's failure to provide Plaintiff with adequate medical care, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendant County employed Correct Care Solutions, LLC (hereinafter "Defendant Correct Care") to administer the

---

[1] This action was originally filed in Jackson County, Missouri Circuit Court as a "Petition."

1

health care of inmates at Jackson County Detention Center ("JCDC"). The actions and conduct of Defendants are the result of a policy, practice, custom, and deliberate indifference on the part of Defendant County, which was at all relevant times led by Defendant Joe Piccinini ("Defendant Piccinini"), and executed through Defendant Correct Care. In this action, the Plaintiff's foot became infected because of the dirty conditions of JCDC and complete lack of treatment, despite repeated requests. Plaintiff's foot ended up nearly being amputated and he was forced to undergo two emergency surgeries.

## PARTIE
S

2.    Plaintiff is a male citizen of the State of Missouri.

3.    Jackson County is a governmental entity in the State of Missouri and owns, operates, manages, directs, and controls the JCDC, which employed Defendant Piccinini at all times relevant herein.

4.    Defendant Piccinini was at all times relevant herein the Director of JCDC. Consequently, he was a policymaker for Defendant County and JCDC, and he was JCDC nursing staffs' supervisor at all relevant times herein. He is sued in both his individual and official capacity.

5.    Defendant Correct Care is a duly organized limited liability company formed under the laws of Kansas and operating in the state of Missouri as a health care provider.

6.    Defendant Correct Care was engaged in a joint venture with Defendant

Jackson County in order to provide medical care to the inmates of the JCDC.

7.     At all times relevant herein, Defendant Correct Care materially participated in the promulgation of policies at JCDC and also contracted with Defendant Jackson County for the training, supervision, direction, and control of all institutional medical and nursing personnel. The Defendants together exercised final decision making authority over institutional medical policies and procedures.

8.     Defendant Correct Care and Defendant Jackson County made an express or implied agreement, for a common purpose, with a community of pecuniary interest in that common purpose, and an equal voice giving an equal right of control in the direction of the enterprise.

## JURISDICTION AND VENUE

9.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

10.     Jurisdiction and venue are proper in Jackson County, State of Missouri pursuant to RSMo. § 508.010.

11.     Plaintiff's cause of action arises out of conduct that took place in Jackson

County, State of Missouri.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

3

13.     Defendant Correct Care was obligated to provide comprehensive health care services in accordance with the National Commission on Correctional Health Care Standards and prevailing practices; comply with and adhere to Defendant County's departmental and institutional policies and procedures; provide specialty health care services; make determinations of medical necessity and appropriateness of services and treatment plans in accordance with nationally recognized, evidence-based criteria; and perform health appraisal examinations of each inmate, including a complete medical history and physical screening and other necessary tests or examinations.

14.     Health care services at JCDC were administered by Defendant Correct Care under the direction, supervision, and control of Defendants County and Piccinini.

15.     Collectively, Defendants actions were not only intentionally willful and reckless, in that they demonstrated a practices which elevated cost savings over prevailing medical practices and patient care, but also demonstrated a deliberate indifference to and disregard for the rights of Plaintiff and other inmates at JCDC.

16.     Defendant Correct Care is (for the purposes of legal analysis) a corporation that was acting under color of state law.

17.     Defendant County is a governmental entity that acting under color of state

law.

18.     Plaintiff's constitutional rights were violated.

19.     Those constitutional rights violations resulted from an official policy and/or custom, and/or deliberate indifference in failing to train and supervise.

4

20.     Plaintiff had a serious medical need, that ultimately required multiple surgeries to correct.

21.     Corporate actors of Defendant Correct Care and state actors of Defendant County had knowledge of the serious medical need but deliberately disregarded that information.

22.     On or about September 22, 2017 Plaintiff was processed into JCDC.

23.     Plaintiff has Diabetes and informed JCDC of his disability.

24.     On or about the week of October 29, 2017 Plaintiff's left foot began to experience swelling.

25.     On or about the week of October 29, 2017 Plaintiff showed his left foot to

JCDC Nurse Nicole (last name unknown).

26.     Nurse Nichole told Plaintiff that he had athlete's foot but that JCDC would not provide any medication for the condition.

27.     Plaintiff purchased medical powder for the athlete's foot with his commissary money.

28.     Plaintiff was not given the medical powder for his foot for 9 days.

29.     Plaintiff continued to experience swelling and a deterioration of the condition of his left foot over the next two to three weeks.

30.     Plaintiff asked several of the other JCDC nurses to look at his foot.

31.     Plaintiff was told by JCDC nurses on more than 10 occasions that they did not have time to examine him.

32.     Plaintiff's foot then swelled to such a degree that it developed a cyst.

33.     Plaintiff continued to request a medical consultation and was denied until

November 13, 2017.

34.     On or about November 13, 2017 JCDC Officer Renco noticed the extensive

swelling of Plaintiff's left foot.

35.     Officer Renco then took Plaintiff to a nurse who referred Plaintiff to the

emergency room of Truman Medical Center at Hospital Hill.

36.     On or about November 13, 2017 Plaintiff was taken to the Truman Medical

Center emergency room where he was evaluated by ER doctors and treated.

37.     Plaintiff was found to have a cyst on his foot in addition to the swelling.

38.     Plaintiff was prescribed antibiotic medication by Truman Medical Center

Doctors.

39.     Plaintiff was then returned to the custody of Defendant County.

40.     From November 13, 2017 to late on November 16, 2017, Plaintiff did not

receive his prescribed antibiotics in the amounts or on the schedule prescribed by Truman

Medical Center physicians.

41.     From November 13, 2017 to late on November 16, 2017, Plaintiff's

condition rapidly deteriorated.

42.     From November 13, 2017 to late on November 16, 2017, Plaintiff's

cyst began to excrete discharge, swelled more extensively and grew in size.

6

43.　　On or about November 16, 2017 Plaintiff was again admitted to Truman

Medical Center's Emergency Room.

44.　　Truman medical center performed an MRI, X-ray, and other tests on

Plaintiff's condition.

45.　　Doctors diagnosed Plaintiff with an abscess infected with MRSA.

46.　　Plaintiff was placed on an aggressive regimen of IV antibiotics.

47.　　Plaintiff's abscess was roughly two inches wide, an inch and a half long

and an inch and a quarter deep.

48.　　Plaintiff's abscess exposed the bone of plaintiff's left foot and affected

each of the toes of his foot.

49.　　Plaintiff was placed on different antibiotics.

50.　　On or about November 22, 2017, Plaintiff underwent surgery on the

abscess and the infected area of his foot.

51.　　To treat the infection, Plaintiff underwent surgery to remove the

infected tissue.

52.　　Plaintiff received no anesthetic, local or otherwise during this surgery.

53.　　The surgeon jabbed a large pair of surgical scissors into the oozing

and infected wound two inches deep, and began cutting away the infected flesh.

54.　　The doctor then had to drain several ounces of puss and diseased fluid

from the infection site.

7

55.     Plaintiff screamed during the procedure due to the pain he was experiencing.

56.     Sheriff's Deputy Casey (Last name unknown) nearly had to leave the room due to the graphic nature of the procedure.

57.     Once the procedure was done Plaintiff was then given a local anesthetic.

58.     Plaintiff had to receive wound packing.

59.     On or about November 30, 2018 Plaintiff was again released to the Custody of Defendant County.

60.     On or about November 30, 2019 Plaintiff had to return to the emergency room due to the disease in his left foot.

61.     Plaintiff was still experiencing extreme pain from the site of his infected abscess, along with pus discharge and the breakdown of tissue.

62.     Plaintiff continued to experience excruciating pain from the site of the abscess. He could not take pain medications due to unrelated medical conditions.

63.     Plaintiff alleges that the Defendants collectively took actions and omissions including :

64. Defendants showed deliberate indifference to a serious medical condition and need. The Defendants displayed a recklessness and conscious disregard of a serious risk. Plaintiff's medical needs were so obvious that the necessity for further medical attention was obvious. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Plaintiff's condition was so obvious that it was seen by Officer Renco, walking down the hallway, even though Plaintiff was repeatedly turned away from care or received insufficient care.

65. Defendants disregarded accepted correctional medical practices.

66. Defendants failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of Defendants' professions.

67. Defendants disregarded ordinary care and medical care for the Plaintiff's serious medical condition(s).

68. Defendants' collective policies and customs resulted in Plaintiff's pain and suffering, as well as emergency surgeries, and nearly losing his foot.

69. Plaintiff requested medical attention approximately 10 times over a two-week period before he was initially hospitalized.

70. Upon information and belief, Plaintiff never saw a doctor. Rather he only saw a nurse who almost certainly initially "diagnosed" the Plaintiff's foot condition incorrectly.

71. It was the Defendants policy or custom to not have a doctor on duty at all times.

72. It was the Defendants policy and or custom to not have the appropriate number of nurses on staff at all times.

73. Plaintiff is under information and belie that the nurses at JCDC were overworked and limited on time.

74. At least four times while the Plaintiff was in the medical pod at JCDC, after returning from the hospital, he was not provided his prescribed antibiotics, simply because the nurse did not have enough time.

75. Plaintiff is under information and belief that the Defendants' policy or custom is to limit medical costs by insufficiently staffing medical personnel and withholding medication – including over the counter medication that must be purchased by inmates themselves.

76. The Plaintiff was not provided his prescription medications upon being released from JCDC, which contributed to his hospitalization the very next day.

77. Plaintiff is under information and belief that the Defendants' policy or custom is to release inmates without providing their medication.

78. When the Plaintiff was ultimately transported to Truman Medical Center on November 13, 2017, he was informed by a nurse working at JCDC that he was the second inmate in approximately one week that needed to be hospitalized for MRSA infection, which upon information and belief, was also misdiagnosed and left untreated for days.

79. JCDC has a long history of providing unsanitary conditions to its inmates. By way of example, a Grand Jury was convened by the Jackson County Prosecutor's Office to investigate conditions in the jail, and the Grand Jury reported that, "The Jail must also address cleanliness to stop the spread of infectious diseases in order to safely maintain its inmate population and staff." The Grand Jury Report is attached and incorporated herein as Exhibit 1. The Grand Jury heard testimony regarding cleanliness in 2018 and cited to multiple studies performed on JCDC during 2016 and 2017.

80. Defendants County and Piccinini did not operate JCDC to American Correctional Association standards.

81. Defendant Correct Care Solutions did not provide medical care consistent with American Correctional Association standards.

82. JCDC was not accredited by any correctional association in the United States, at any relevant time.

83. It was the policy of the Defendants to fail to provide a "medical ombudsman" to provide resources for inmates, even though the Jackson County Jail Task Force called for such a position in 2016. A copy of the Jackson County Jail Task Force is attached and incorporated as Exhibit 2.

84. At virtually every opportunity to cut costs, the Defendants chose to take a more profitable action over a more medically sound action including but not limited to: employing no or shallow medical screening upon intake, understaffing medical personnel, ignoring medical complaints, providing medication, forcing inmates to purchase their own medications, not providing doctors, undertraining staff, and generally operating in filthy conditions that spread infectious diseases.[2]

85. It is the Defendant County's policy and/or custom to use the medical housing pods at JCDC as overflow housing units which contributes to problems of understaffing and distribution of medication.

86. Defendants' staff (including Correct Care medical contractor staff) are undertrained as identified in the Legislative Audit Report conducted by CRA, Inc., which is attached and incorporated as Exhibit 3.

---

[2] Exhibit 2 *passim*, and specifically at 9.

87. Plaintiff is under information and belief that it is the policy of the Defendants to only have a physician on site "as necessary and according to contract."[3] The Defendants policy tellingly provides no criteria to determine whether the on-site presence is "necessary."

88. It is the policy of the Defendants to perform "high risk, high cost, high volume or problem events" on site, as opposed to offsite in the care of a trained physician or emergency room.[4] This policy placed inmates at danger since physicians are almost never on site and medical personnel at JCDC is undertrained and understaffed.

89. Plaintiff is under information and belief that it is the policy of the Defendants to perform "infection control and infectious disease management" on site.[5] This policy is inherently dangerous given JCDC's history of filthy conditions, lack of trained personnel, and understaffing.

90. The Plaintiff's infectious disease should have been treated at an Emergency Room from the beginning, rather than untreated at JCDC.

91. Plaintiff is under information and belief that it is the custom of Defendants to fail to follow policy "A3.04.02 Monitoring of Health Services." Regular audits and "chart reviews" are not performed. Grievances and complaints are not investigated, including the Plaintiff's complaints.

92. The Defendants have had a number of high profile lawsuits filed against them

---

[3] Policy A3.02.
[4] Policy A3.04
[5] Id.

for violating inmates civil rights relating to medical care, including failing to diagnose, failing to care for, and falsifying medical records.[6]

93. As a result of the Defendants' actions, Plaintiff sustained terrible damage, including but not limited to the excruciating pain associated with having scissors jammed into his foot to remove infected and damaged tissue, the permanent limp and damage to his foot, ongoing medical treatment that may ultimately culminate in another surgery, daily physical pain, and emotional pain and trauma.

## COUNT I:
## INADEQUATE MEDICAL TREATMENT IN VIOLATION OF THE FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, COGNIZABLE UNDER 42 U.S.C. § 1983

94.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

95.     Defendants had a duty to provide adequate care to Plaintiff while he was in Defendants' custody.

96.     Plaintiff had several serious medical needs throughout his confinement in JCDC.

97.     Defendants were aware of Plaintiff's various serious medical needs including his diabetes as well as the development of swelling and sores of his feet due

---

[6] *See* Aguirre et al v. Correct Care Solutions LLC, et al, 4:19-cv-00446

13

to his diabetes, and the need to administer antibiotic medication properly to treat these medical conditions.

98.     Defendants, with deliberate indifference, failed to adhere to Plaintiff's various medical necessities.

99.     As a direct and proximate result of the foregoing, Plaintiff suffered various injuries, including, but not limited to, those described herein.

100.     Each of the aforementioned actions and/or omissions of Defendants were committed under color of state law and/or pursuant to the policies, customs, practices, rules, regulations, ordinances, and/or statutes of Defendant Jackson County and/or the Jackson County Jail.

101.     Defendants' were acting under color of state law.

102.     Defendants are not entitled to qualified immunity for their actions described herein.

103.     Defendants' actions and/or omissions were done with deliberate indifference to Plaintiff's rights.

104.     As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for Plaintiff's rights, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and others similarly situated from such conduct in the future.

105.     Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. §

14

1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

**COUNT
II:
DENIAL OF ACCESS TO COMPETENT MEDICAL CARE IN VIOLATION
OF THE FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT TO THE
UNITED STATES CONSTITUTION, COGNIZABLE UNDER 42 U.S.C. § 1983**

106.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

107.    As stated herein, Defendants, their agents and employees, with knowledge of Plaintiff's various medical needs, and/or with deliberate indifference to such medical needs, have acted or have failed to act, on numerous occasions, in such a way as to deprive Plaintiff of necessary and adequate medical care thus endangering Plaintiff's health and well-being.

108.    Defendants, their agents and employees, with knowledge of Plaintiff's various medical needs, have a duty to provide medical care to inmates of the JCDC in conformity with the standards for delivery of such medical care in the State of Missouri as a whole.

109.    Defendants, their agents and employees, with knowledge of Plaintiff's various medical needs, or with deliberate indifference to such medical needs, acted

15

or failed to act in such a way as to provide medical care to Plaintiff in conformity with the standard for delivery of such medical care in the State of Missouri as a while and have in fact provided medical care which does not meet such standards thus endangering Plaintiff's health and well-being.

110.     Defendants, knowing of the medical needs of Plaintiff, and knowing also of the inadequacies and deficiencies in the medical facilities staffing and procedures at the

JCDC, have a duty to establish and implement policies, practices, and procedures designed to assure that Plaintiff receive medical treatment and care in conformity with the standards for delivery of such medical care and treatment in the State of Missouri as a whole.

111.     Defendants, knowing of the medical needs of Plaintiff, and with deliberate indifference to the inadequacies and deficiencies in the medical facilities, staffing, and procedures at JCDC, have failed and neglected to establish and implement policies, practices, and procedures designed to assure that Plaintiff receive medical treatment and care at the standards in Missouri as a whole, or have adopted policies, practices, and procedures which Defendants knew, or reasonably should have known, would be ineffective in delivering medical treatment at such standards, thus endangering Plaintiff's health and well-being.

112.     Defendants, knowing of the medical needs of Plaintiff, have a duty to instruct, supervise, and train their employees and agents to assure the delivery of medical care to Plaintiff which is consistent with the standards of medical care in the

16

State of Missouri as a whole.

113.    Defendants, knowing of the medical needs of Plaintiff, or with deliberate indifference to such needs, have failed to instruct, supervise, and train their employees and agents in such a manner as to assure the delivery of medical care to Plaintiff which is consistent with the standards of medical care in the State of Missouri as a whole, thus endangering Plaintiff's health and well-being.

114.    As a direct and proximate result of the foregoing, Plaintiff has suffered – and continues to suffer – physical and personal injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

115.    At all times relevant herein, the individual Defendants were acting under color of law prescribed to them and/or pursuant to policies, customs, and/or practices of Defendant Jackson County.

116.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and other similarly situated from such conduct in the future.

117.    No Defendant is entitled to qualified immunity for their actions.

118.    Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

## COUNT III:
## CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, COGNIZABLE UNDER 42 U.S.C. § 1983

119. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

120. The above acts and/or omissions of Defendants as described herein constitute a deprivation of Plaintiff's constitutional entitlement to be free from cruel and unusual punishment as guaranteed by the United States Constitution.

121. Defendants' actions and/or omissions were done with deliberate indifference to Plaintiff's constitutional rights.

122. Defendants' actions and/or omissions were the result(s) of official customs, practices, and/or policies.

123. Plaintiff's right to be free from cruel and unusual punishment was well- established at all times relevant herein such that any reasonable law enforcement officer would have been aware of the standard.

124. As a direct and proximate result of the foregoing, Plaintiff has suffered

– and continues to suffer – physical and personal injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

125.    At all times relevant herein, the individual Defendants were acting under color of law prescribed to them and/or pursuant to policies, customs, and/or practices of Defendant Jackson County.

126.    At all times relevant herein, Defendants were acting with deliberate indifference to Plaintiff's clearly established constitutional rights.

127.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and other similarly situated

from such conduct in the future.

128.    No Defendant is entitled to qualified immunity for their actions.

129.    Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. §

1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

19

## COUNT IV:
## FAILURE TO
## TRAIN

130.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

131.    As demonstrated herein, Defendants' actions and/or inactions, as well as the actions and/or inactions of various Defendant County corrections officers, deprived Plaintiff of numerous rights guaranteed to him under the United States Constitution.

132.    At all times relevant herein, Defendants acted under color of law prescribed to them and/or pursuant to policies, customs, and/or practices of Defendant Jackson County.

133.    At all times relevant herein, Plaintiff is under information and belief that the training policies of Defendant County and Defendant Piccinini were not adequate to train their officers to handle the usual and recurring situations with which they must deal.

134.    Defendants were deliberately indifferent to the obvious consequences of their failure to train its officers adequately.

135.    The failure of Defendant County and Defendant Piccinini to provide adequate training caused the deprivation of Plaintiff's rights; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's Constitutional rights as to be the moving force that caused the ultimate injury(ies).

136.    Defendant County and Defendant Piccinini were or should personally have been aware that Plaintiff faced a substantial risk of serious harm by failing to properly

train their subordinate officers as set forth herein.

137.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

138.   As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and others similarly situated from such conduct in the future.

139.   Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights is part of a pattern and practice of similar behavior on the part of Defendants.

140.   No Defendant is entitled to qualified immunity for their actions.

141.   Defendant County is not entitled to qualified immunity and is separately liable for the JCDC's policies, usages, customs, practices, and/or Defendant Piccinini's decisions as the final decision and policymaker.

142.   Plaintiff is under information and belief that at all relevant times herein, Defendant Piccinini had policymaking authority over the policies and procedures of Defendant County and/or the JCDC that directly and proximately resulted in the deprivation of Plaintiff's constitutional rights.

143. Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. §

1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

## COUNT V: FAILURE TO SUPERVISE

144. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

145. As demonstrated herein, the actions and/or inactions of Defendants and various Defendant County corrections officers deprived Plaintiff of numerous rights guaranteed to him under the United States Constitution.

146. Defendant Piccinini personally knew that his subordinates were engaging in the aforementioned acts which caused Plaintiff to face a substantial risk of serious harm.

147. Plaintiff is under information and belief that Defendant Piccinini provided inadequate supervision of his subordinates so as to ensure compliance with existing JCDC policies and procedures, as well as appropriate "industry standards."

148. Plaintiff is under information and belief that Plaintiff's Constitutional violations as set forth herein were not the first committed by Defendant County employees, namely subordinates of Defendant Piccinini.

22

149.   Defendant Piccinini made a deliberate choice not to provide adequate supervision over his subordinates.

150.   Moreover, Defendant Piccinini should have been aware of widespread abuse, meaning abuse that was obvious, flagrant, rampant, and of continued duration thus putting Defendant Piccinini on notice of the need to take corrective action through heightened supervision of his subordinates.

151.   At all times relevant herein, all individual Defendants were acting under color of law prescribed to them and/or pursuant to policies, customs, and/or practices of Defendant County and/or the JCDC.

152.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

153.   As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and others similarly situated from such conduct in the future.

154.   No Defendant is entitled to qualified immunity for their actions.

155.   Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

### PLAINTIFF DEMANDS A JURY TRIAL

Respectfully submitted,

HOLLINGSHEAD & DUDLEY

Date: October 26, 2020

*/s/ Nicholas Dudley*
Nicholas Dudley #62860
1114 West Main Street
Blue Springs, Missouri 64015
Phone: (816) 224-9500
Fax: (816) 224-9503
ndudley@hdtriallawyers.com
ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was served on all counsel of record via the ECF electronic court filing system on October 26, 2020.

*/s/Nicholas Dudley*

24